UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TYRONE B. SCOTT,<br><br>                              Defendant. | Criminal Action No. 3:11–CR–158 |

**MEMORANDUM OPINION**

THIS MATTER is before the Court on the Motion to Suppress filed by Defendant Tyrone B. Scott (ECF No. 3). In his motion, Scott asks the Court to suppress all evidence and statements obtained after he was frisked for weapons following an investigative stop. The Court held a hearing on this matter on August 9, 2011. For the reasons stated below, the Court will deny the Defendant's motion to suppress.

**I.   BACKGROUND**

At approximately 7:10 p.m. on January 24, 2011, Officer James E. Freeman was on routine patrol of the grounds of the McGuire Veterans Administration Medical Center ("the VA Medical Center"). The medical center is located adjacent to a high-crime area in Richmond, and some crime spills over from the surrounding area.

At the time Officer Freeman was on patrol, the area was dark and lighting was limited. Officer Freeman observed a vehicle passing by him and believed that the driver was speeding. He made a U-turn to follow the vehicle and engaged his lights to effect a traffic stop. When he reached the vehicle, it was parked illegally at the entrance to the spinal cord unit, where no parking is permitted. As Officer Freeman approached the

1

vehicle, he observed two people exit the vehicle and recognized them as VA Medical Center employees. Upon observing Officer Freeman, the driver of the vehicle, Defendant Tyrone B. Scott, returned to the vehicle, threw something in the car, and locked the car with a key remote. Officer Freeman directed both individuals to stop. The passenger complied, but the Defendant did not. Instead, Scott continued to walk toward the officer and attempted to engage him in conversation. After Officer Freeman repeated his directive to stop, Scott complied, turned away from Officer Freeman, and began fidgeting and moving his hands around.

Officer Freeman called for backup. The Defendant continued fidgeting during the one to three minutes that passed before the arrival of Officer Freeman's backup, Lieutenant John Brown. Officer Freeman directed the Defendant to put his hands on the vehicle. The Defendant complied for a brief period of time before he resumed fidgeting and moving his hands around. Before investigating further, Officer Freeman sought to ensure his safety and that of Lieutenant Brown by patting down the Defendant while his backup covered the other individual.

During the pat-down frisk, Officer Freeman discovered a hard object that turned out to be a glass "crack pipe." Scott was then taken to the onsite police operations center, where he was read his rights. He consented to a further search of his person and vehicle. A search of the vehicle revealed a vial containing cocaine on the driver's side floorboard.

The Defendant now challenges the pat-down frisk, arguing that neither the circumstances of the stop nor his conduct warranted a protective frisk. The Government opposes the motion.

## II. **LEGAL STANDARD**

The Fourth Amendment ensures that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Therefore, "[e]vidence gathered as fruit of an unreasonable search or seizure is generally inadmissible against a defendant," except for the purpose of impeachment. *United States v. Brown*, 401 F.3d 588, 592 (4th Cir. 2005) (citing *Taylor v. Alabama*, 457 U.S. 687, 694 (1982); *Wong Sun v. United States*, 371 U.S. 471, 484-86 (1963); *Walder v. United States*, 347 U.S. 62, 64-65 (1954) (holding illegally obtained evidence admissible for purposes of impeachment)). "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Factors for consideration include whether officers displayed weapons, activated emergency lights or sirens, physically touched the defendant, or used "language or tone of voice indicating that compliance . . . might be compelled." *Id.* at 554-55 (1980); *also Michigan v. Chesternut*, 486 U.S. 567, 575 (1988).

A police officer may conduct an investigatory detention or seizure, commonly referred to as a *Terry* stop, without violating the Fourth Amendment when the officer possesses "a reasonable and articulable suspicion" that criminal activity is afoot. *United States v. Smith*, 396 F.3d 579, 583 (4th Cir. 2005); *see Terry v. Ohio,* 392 U.S. 1, 30 (1968); *United States v. Reaves*, 512 F.3d 123, 126 (4th Cir. 2008). Whether the facts give rise to a reasonable and articulable suspicion must be judged objectively—that is, whether a "man of reasonable caution" in the shoes of the police officer, given the facts, would believe the

3

investigatory detention was appropriate. *Terry*, 392 U.S. at 20. Although reasonable suspicion is a less demanding standard than probable cause, "[t]he officer . . . must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotations omitted). To determine whether an officer had a reasonable suspicion of criminal activity, courts assess the totality of the circumstances surrounding the seizure. *Id.* at 8. There are numerous relevant facts that may be considered, including the experience of the officer. *See United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993) (internal citation omitted) (noting that the "practical experience of the officers" is a factor that may raise the level of suspicion).

An officer may conduct a limited protective pat-down search for weapons, or a *Terry* frisk, if the "police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous." *Terry*, 392 U.S. at 30. In that situation, the officer "is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." *Id.* Contraband discovered during a lawful frisk may be seized if the contour and mass make its identity as contraband immediate and apparent. *Minnesota v. Dickerson*, 508 U.S. 366, 373-75 (1993); *also United States v. Raymond*, 152 F.3d 309, 312-13 (4th Cir. 1998).

### III. DISCUSSION

Scott does not challenge the validity of the stop. Thus, the sole issue before the Court is whether reasonable suspicion based on articulable facts justified the frisk. Scott argues

4

that neither the circumstances of the stop nor his conduct warranted reasonable suspicion that he was armed and dangerous. The Court disagrees.

Scott's behavior, which included returning to the vehicle that was illegally parked, tossing something inside, locking the door after observing Officer Freeman approach, failing to comply with Officer Freeman's first directive to stop, turning away from Officer Freeman, fidgeting throughout the encounter, and moving his hands around, provided ample justification for the protective frisk. The VA Medical Center's proximity to a high-crime area and Officer Freeman's awareness that crime from the surrounding area spills over to the medical center also contributed to the set of circumstances that warranted the protective frisk. The Court recognizes that being in a high-crime area alone does not create reasonable articulable suspicion that criminal activity is afoot. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *also United States v. Massenburg*, No. 10-4209, slip op. at 3 (4th Cir. Aug. 15, 2011). In this case, however, Scott's conduct, constant movement, and nervousness—when combined with the VA Medical Center's location—provided Officer Freeman with reasonable articulable suspicion that Scott may have been armed and dangerous. *See United States v. Mayo*, 361 F.3d 802, 804-07 (4th Cir. 2004).

### IV. CONCLUSION

As the Supreme Court noted in *Terry*, officers must make "quick decision[s] as to how to protect [themselves] and others from possible danger." *Terry*, 392 U.S. at 28. Given the circumstances of his January 24 encounter with Scott, Officer Freeman's quick decision to frisk Scott to ensure the officers' safety was justified. Accordingly, the Court DENIES the motion to suppress.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

> _____/s/_____
> James R. Spencer
> Chief United States District Judge

ENTERED this  29th  day of August 2011.